SOMMERVILLE, J.
Plaintiffs, husband and wife, sue for- damages to their minor son, Leopold, aged 20 years, who was run down and killed by one of defendant’s wagons at the corner of North Rampart and St. Peter streets, in the city of New Orleans. They allege that a team of mules attached to a wagon belonging to defendant were going at a fast rate of speed, and, without warning to their son and without attempt to slacken the team and wagon, the driver thereof carelessly and negligently drove over the said Leopold, knocking him down, so that the mules passed over him, and thereafter the front wheel of the wagon on the right-hand side thereof passed over the body, and still, without stopping the team and wagon, the driver and team and wagon continued so that the rear wheel of the same side of the wagon rolled over the body of the said Leopold Legendre.
They allege that the driver of the team and wagon was a minor, and was careless, reckless, and boyish, and not accustomed to, and not capable of, driving such a team, and that the placing of him in charge of the team and wagon by defendant was an act of gross negligence and carelessness; that the driver of said team, if he had been experienced, careful and attentive, and capable of managing and driving said team, could have avoided driving over and knocking down petitioners’ said son, and even after he was knocked down could have stopped said team.and wagon and could have avoided causing the fatal injury aforesaid to petitioners’ son resulting from the passing over his body of the front and rear wheels on the right side of the wagon.
Defendant answered, denying generally the allegations contained in the petition, and charged contributory negligence on the part of the deceased boy.
There was judgment in favor of plaintiffs, and against defendant. Defendant has appealed. Plaintiffs have answered the ap *123 peal, and ask for an increase in the amount of the judgment.
Plaintiff introduced but one witness, to prove the allegations with reference to the experience and care and attention of the driver, and he (the witness) was the manager of the defendant company. He testified that the boy driver was 18 years of age, and that he. had been in the employ of the company, and in charge of the team as driver of the wagon, for 2 years at the time of the accident, and had remained in the employ of the company, as driver, for 4 or 5 months longer, at which time he joined the United States Navy; thp.t he was competent, and a careful driver, and had met with no accident during the time of his employment except' the one now under consideration.
The allegation in plaintiffs’ petition to the effect that the driver was incompetent and careless was not therefore proved.
And the evidence fails to show that the mules were being driven at a fast rate of speed. It shows that the mules were being driven in a walk, dr a very slow gallop. Plaintiffs appear to have abandoned this allegation, for on their brief they say:
“The burden of establishing contributory negligence is upon the defendant who pleads it. We contend that the evidence does not support the plea, but that if the plaintiffs’ case is not sufficiently made out, without a resort to the doctrine of the last clear chance, then that doctrine protects the plaintiffs from the plea of contributory negligence.
“It is perfectly clear that if young Legendre were guilty of any contributory negligence, which we deny, the defendant company’s agent (the boy driver) had ample opportunity, after the deceased’s contributory negligence ended, to have avoided the accident and saved the life of the deceased.”
And counsel argues because the mules were going at a slow pace, that, after the deceased was knocked down, the driver had the last, clear chance of stripping the mules and the wagon before the wheels of the wagon rolled over the deceased and killed him. Counsel thus seeks to divide the accident into two parts: the one occurring at the time the deceased and the 'mules collided, when the deceased was knocked down, and the time when the wheels of the wagon rolled over the body of the deceased and killed him.
The evidence is to the effect that Leopold Legendre and a young companion were walking up North Rampart street, and on reaching St. Peter street, upon which is laid an electric car track, that they, Leopold and his friend, in deep conversation, with eyes on the ground, and without looking or listening, or using the caution of prudent men, walked into the mules of defendant’s wagon which was going out St. Peter street, towards the lake, on the electric car track.
Leveque, the companion of young Legendre, said:
“The mules jumped over Ms body, but the right wheels of the wagon passed over Mm. I did not see the wagon until it was right on ‘Doc,’ and I do not believe, he saw it either until it struck him. As the pole hit ‘Doc,’ the driver drew up on Ms reins. He (the driver) did not give us any warning whatever of his approach. The team was going at a pretty fast rate. I do not know whether the mules were running or going at a fast walk. ‘Doc’ and myself were walking at a moderate step and, just before he was struck by the pole of the wagon, we were looking down at the street in front of us. We did not look up or about to see if any veMcles were coming.”
Again, he said:
“tie (Legendre) was just about a step and a half ahead" of me, and, when I looked up, I saw the wagon and tried to grab him, but it was too late. That’s when we was crossing the street. I raised up by head, and I saw the wagon was right on us, and that’s when I tried to grab him. I was on the track at the moment. I hollered: ‘Look out, Doc!’ I tried to grab Mm and I stepped' back myself, but it was too late; the shaft done had hit Mm already. He (the driver) never hollered; all he tried to do was to cheek the mules, but he couldn’t. He tried to check them as soon as he hit Leopold. The two right wheels of the side of the wagon went over him. That’s when I tried to pick Mm up. He tried to check his mules, but Ms *125 mules was going at pretty fast speed and be couldn’t check them. He would have rolled over his chest if he didn’t try to check them, because, when he tried .to check them,.the wagon kind of turned to the left side of the street. He just pulled on the lines, and went about 30 feet. I didn’t see the wagon until it'was right on us; that’s when I hollered at him, but he never heard. Well, the mules almost struck me, because he was just about a step and a half ahead of me when I stepped up and saw it and jumped back and tried to grab him and hollered at him. In other words, there was no reason why the driver shouldn’t have seen Legendre, and no reason why the boy shouldn’t have seen the wagon. I have a habit of walking; I always lag behind. After he rolled over him, I picked him up. I could see he was trying to stop the mules. There is a little incline in the street railroad track at the corner of St. Peter and Rampart streets running down from the neutral ground in Rampart street. The neutral ground comes like a. little hill from Rampart street.”
The accident was witnessed by several persons, all of whom testified to about the same thing; to the effect that young Legendre had ventured to cross St. Pefer street, in conversation with his friend, and with his eyes on the ground.
[1] Legendre was guilty of negligence in so doing, in that he did not use the ordinary caution of a prudent man in crossing a city street, particularly with a car track on ÍF; and* in failing to look to see that the way was clear.
[2] The evidence is equally conclusive that the driver of the wagon was going at a rather slow rate of speed, with a very heavy load, on a downgrade, and that he did not see the young men approaching the crossing until they were within some few feet thereof. He says that he did not suppose that the young men would continue on their way and cross the street in view- of the fact that his heavily laden team was going through the middle of the street, on the car track; hut that, when he realized the danger they were in, he hollered, and endeavored to check his mules; but that-Legendre walked steadily in front of one' of the mules and was knocked down by it.
It was a reasonable supposition on the part-of the driver that young Legendre and his companion would not continue to proceed upon their way, and contest the crossing with the mules, and it was not negligence on his part to come to such conclusion; although he may have been negligent in not seeing the young men at a further distance from the crossing, and to have warned them, if he had seen that they were not paying attention to where they were going.
[3] The rule of law applicable to a case of peril threatening one of two parties, or both, is that an independent obligation rests upon each to look out for his own safety, and to see that no harm comes, through his fault, to the other, each being liable for the consequences flowing from his own breach of duty; with the qualification, however, that, if harm comes to one through the negligence of both, the consequences (except in admiralty) are not shared between them, but the injury remains where it falls, which qualification is, in turn, subject to the exception that if, notwithstanding the negligence of the one party, the other, by the exercise of ordinary diligence, can avoid the injury or the infliction of the injury, and fails to do so, he alone must bear the consequences.
The harm that came to young Legendre was through his own negligence, and perhaps through the negligence of defendant’s driver also; and the injury must remain where it fell, unless the evidence shows that notwithstanding the negligence of Legendre that the other party, by the exercise of ordinary diligence, could have avoided the injury, in which event the defendant would have to bear the consequences.
[4,5] The question therefore is whether defendant’s driver had an opportunity to *127 stop the mules and wagon in time to avoid the accident, and if defendant is responsible under the doctrine of the last clear chance.
Defendant argues that, if there was negligence on its driver’s part, the negligence was concurrent with that of the deceased, and that the negligence of the driver did not supervene or follow upon the negligence of the deceased.
On the other hand, plaintiffs argue, of seem to argue, that the accident is divisible into two parts: One at the time when the deceased was knocked down by the mules, and the other when the deceased was run over by the wheels of the wagon.
We cannot concur in the latter proposition. There was but one accident, and that was when the mules which were drawing the heavily laden wagon knocked the deceased down and the wheels of the wagon ran over him and killed him.
Even if the accident might be divided into two parts, there is no evidence in the record going to show negligence on the part of the driver after young Legendre was knocked down by the mules. It is shown that, even before the mules knocked Legendre down, the driver exerted his utmost to stop the team, and that he continued his efforts in that direction until he actually stopped them from 4 feet to 100 feet, as it is variously estimated by the witnesses, from the point of the accident. The mules were apparently going at an ordinary gait, on a downgrade, with a very heavily loaded wagon, when Legendre fell under the mules, which, without doubt, startled the mules and caused them to accelerate their speed and become, to a certain extent, hard to manage; and they continued to go until the terrible tragedy to young Legendre was enacted.
■The negligence of Legendre cannot be said to have ceased when he walked before the moving mules, and the negligence of the driver cannot be said 1o have supervened upon that of the deceased. The negligence on the part of both, if the driver were negligent, was concurrent, and the negligence .of both was the proximate cause of the injury. Under such circumstances, each was liable for the consequences flowing from his own breach of duty.
There was certainly an earnest attempt on the part of the driver before and after young Legendre had fallen under the mules to stop the mules and to have avoided the accident. The fall of the deceased and the running of the wheels of the wagon over his body were in such close proximity one to the other that the danger from the wheels was not so obvious to the driver as to constitute negligence on his part in failing to take it into account. The danger from the wheels was evidently obvious to the driver, but the accident was unavoidable under all the circumstances. Negligence cannot therefore be attributed to the driver because of the lapse of time between the fall of the deceased and his being crushed under the wheels.
Even if it were held that it was negligence on the part of the driver nQt to have seen young Legendre as he approached the car track on which the wagon was until he was within 6 or 8 feet of the track, and that it was further negligence in assuming that Legendre would not walk before the moving mules, such negligence on his part was concurrent with the negligence of Legendre, and the former’s negligence did not supervene upon that of the latter; and there was therefore no last clear chance, or any chance at all, for the driver to have avoided the accident.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and that there now be judgment rejecting plaintiffs’ demand at their costs in both’ courts.
MONROE, O. J.', dissents.