## No. 2010.
### Second Circuit Appeal.

## THOMAS W. HERRIN v. FRANK CICARDO.

(Feb. 3, 1925, Opinion and Decree).

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Appeal—Par. 625.**
The judgment of the trial court on questions of fact, not being erroneous, is affirmed.

2. **Louisiana Digest—Negligence—Par. 25.**
Where the negligence of both parties concurs in producing the injury, the consequences (except in admiralty) are not shared between them but the injury remains where it falls.

3. **Louisiana Digest—Automobiles—Par. 7; Municipalities—Par. 224.**
Where one steps in front of an auto without looking he is contributorily negligent and cannot recover even though the auto driver was negligent in not blowing his horn, and running fast.

(Civil Code, Art. 2315. Editor's note.)

On appeal from Thirteenth Judicial District court, Parish of Rapides, Hon. L. L. Hooe, Judge.

This is a suit for damages for personal injuries sustained in an auto accident where a pedestrian was hit and injured.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Gus A. Voltz, of Alexandria, attorney for plaintiff and appellant.

Lamar Polk, of Alexandria, attorney for defendant and appellee.

CARVER, J. Plaintiff sues for damages for personal injuries inflicted on him by a delivery truck driven by defendant's son, Nick Cicardo, 18 years old.

He alleges negligence on the part of defendant's son in driving at an excessive rate of speed, not signalling and not looking.

The defense is a denial of defendant's negligence and a plea of contributory negligence.

From the testimony of the witnesses and the map and photographs introduced in evidence, the *locus in quo* is shown as follows:

Tenth street, in Alexandria, running north and south, is one of the main streets, traffic on the same being quite heavy, especially in the evening. It is forty-eight and one-half feet wide from the sidewalk on the east to the freight depot of the Texas & Pacific Railway Company on the west. This depot extends on the west side of Tenth street a distance of two blocks. There is no pavement next to the depot.

Fisk street, thirty-three and four-tenths feet wide between curbing, fifty-three and four-tenths feet wide between property lines, comes to Tenth street from the east but does not cross it. The space on the west is occupied by the depot.

On the northeast corner of Fisk and Tenth streets is a candy kitchen and on the southeast corner is the house of Eppinette, one of plaintiff's witnesses, facing Fisk street.

The map filed in evidence shows five doors of the depot marked as follows, beginning on the north, namely: 8D, 6, one unmarked and C. The doors are eight feet wide and the distance between them nineteen feet.

The map shows certain positions fixed by Ball who made it from information furnished him by plaintiff, as follows: Herrin's car, pointed south, five feet from

the depot and on edge of the brick pavement, the right wheel being over the edge on the depot side; Herrin at the place where picked up, twenty-five feet south of his car; Brown-Robert truck in front of door C about sixty feet south of Herrin's car; place where Cicardo's truck stopped in Tenth street about sixty-five feet from Herrin's car.

Plaintiff, as a witness, states his case as follows:

As I was coming down Tenth street, the car was rolling as I had a puncture, I drove to the other side of the street on the right side and stopped. I opened the door on the right side and got out on the right side, I stepped down and looked at the back tire on the right side, and then the one on the front, which was entirely out of the street on that side. There was nothing wrong with either tire. I walked around the car towards the front. I got around there and the left tire on the front wheel was about two-thirds gone. I looked down the street, I saw a truck coming driven by Nick Cicardo, and then as I was standing right by the side of the car when he drove in, his right fender struck me.

Q. You state that you saw him down the street?
A. Yes, sir.
Q. Please state how far his truck was down the street when you noticed him?
A. About across the court room.
Q. About twenty-five feet?
A. Yes, sir.
Q. When he was twenty-five feet from you, what did you then do?
A. I just stayed by the side of my car.
Q. And then when he got up closer to you, what did you do?
A. He struck me on the right side. He missed my car about one and one-half feet, was how close he ran into my car.
Q. At the time he struck you, were you standing still or walking around towards (Interrupted).
A. I was standing still.

Q. Did you think that he was going to come that close to your car?
A. No, sir.
Q. How far were you from the left fender of your car?
A. Right against it.

He then states that he was struck on the right arm; was dragged down the street about twenty-five or thirty feet when he rolled off; that the truck did not stop when he rolled off but ran "at least one-half block, whatever distance that is. It must have run sixty or seventy feet from where I fell off; that the first two persons reaching him were David Wilson and Charles Lassiter, and then Nick Cicardo who asked if he was hurt and kept saying "I did not see you, I did not see you"; that the incident occurred between 4:30 and 4:45 p. m., when it was still light; that his car had been stopped two or three minutes before he was struck; that he was standing right up against his fender, too close to see the deflated tire, but had previously seen it from the front; that he was standing there considering whether to fix it there or not; that Cicardo did not sound his horn; that no other car was passing; that there was room for three or four cars between his car and the east side of Tenth street, so he did not think Cicardo would strike him because Cicardo was "sort of swerved out into the street" as shown by the tracing of Cicardo's course on the plat; that he had gotten up unassisted and returned to his car when Ardoin came up.

He stated at first that his car was eight or ten feet from the depot (transcript, 34) but on looking at the plat, said it was as shown thereon, which was only three or four feet from the depot. He also says there was no car between his car and the depot and no room for any.

His account is substantially corroborated by Lassiter, a boy twelve years old in the

low sixth grade, who had just come out of Eppinette's house, and also by David Wilson, a school boy eleven years old, in the low sixth grade, who was on the sidewalk in front of the candy kitchen. These boys both say they saw Cicardo's car first when it was about fifteen feet from Herrin's car and that it was going at the rate of twenty miles an hour or more. Eppinette (T. 67) says it was going about this fast after Herrin was struck.

Nick Cicardo, driving the Cicardo truck, after stating that he saw a Ford car parked on the side of the street but saw nobody around it, was asked what happened then, and stated:

"I was coming near to Mr. Herrin's car and he came around and when I was almost there to the front of his car, he stepped out to the right fender of my car and walked right into my car and he missed his hand and hit the wind-shield and turned around and fell to the ground, and I stopped—I stopped all at once, and then I moved on to the side of the street:

Q. Did you see him prior to the time that he stepped out from the front of his car?
A. I seen him when he stepped right into my car, that was the only time I seen him.
Q. What part of your car did he step into?
A. At the right fender, near the front wheel.
Q. Did your car drag him or carry him any distance?
A. No, sir.

He further stated that Herrin fell about eleven or fifteen feet from where he first struck him; that he fell near the back end of the Brown-Robert truck; that this Brown-Robert truck was between Herrin's car and the depot; that from the time he saw Herrin he did not have time to apply his brakes, blow his horn or switch his truck; that he was looking in the direction where he was going; that he was travelling nine or eleven miles per hour; that he did not see Herrin standing beside his car but would have seen him had he been there; that just before striking Herrin he had swerved out into Tenth street to go around the Thompson-Ritchie truck; that he did not say to Herrin "I did not see you"; that after swerving out into Tenth street to go around the Thompson-Ritchie truck he had swerved back towards the depot and then out again so as to get straight down Tenth street.

He further says that he did not pass further away from Herrin's car because he had to give room to another car coming on Tenth street towards him, which car he missed about two feet and Herrin's car about three feet. We do not find any corroboration of his statement as to this other car. Mayfield says no other car was passing then. (T. 166.)

He admits not blowing his horn.

After stating he had stopped a second time about twenty feet from where he hit Herrin, he located the place where he stopped on the plat, which was approximately fifty feet from where he hit Herrin.

His account in respect of the speed at which he was travelling, the way in which Herrin was struck, the distance Herrin was carried before he fell, the distance travelled by the Cicardo truck after striking him, and the stopping of the truck twice, was corroborated by the testimony of March Parker and Victor Mayfield who claimed they were on the Brown-Robert truck, which, they say, was parked between Herrin's car and the depot, the front wheels of their truck just beyond the front wheels of Herrin's car; their truck facing north and Herrin's car south.

This location is between door D and door 6 on the plat.

They state that their truck had been parked at this place about ten minutes waiting to deliver freight at the depot when Mr. Herrin came up and stopped his car. They give the same account as he does of his getting out on the right hand side of his car and inspecting the tires on that side and then walking around the front of his car, but differ from him as to what then occurred, they stating that he walked right into the Cicardo car.

Plaintiff makes a serious attack on the testimony of Parker and Mayfield, claiming that the Brown-Robert truck was not where they place it, between Herrin's car and the depot, but about seventy-five feet south of that, at door C.

Eppinette, Ardoin and Payne, who all went to Herrin, reaching him, though, after he had returned to his car, state they did not see this truck near Herrin's car. Payne says he saw a car that he thought was the Brown-Robert truck some fifty-five or sixty feet in front of Herrin's car. David Wilson also located the Brown-Robert truck about where Payne does. Eppinette says there was one truck about where Payne and Wilson located the Brown-Roberts truck but he didn't notice name, and one about two doors behind Herrin's car.

On the other hand, the position of the Brown-Robert truck where Parker and Mayfield place it is testified to by F. H. Heard who was driving the Thompson-Ritchie truck, in front of which Cicardo passed just before striking Herrin, by Archie Norris who was on the Thompson-Ritchie truck with Heard, and by E. T. Barnacastle the receiving clerk of the railway company. Compton the delivery clerk of the railway company did not know where the Brown-Robert truck was but states positively it was not where Payne and Wilson place it, namely, at door C, and states that door

C is the place where Cicardo's truck stopped after the occurrence. He further states that the doors north of door 6 are places where freight is received and doors south of 6 are places where freight is delivered by the railway company. The Brown-Robert truck was bringing freight to the depot so had no business at door C.

There is no reconciling the accounts given by the two parties in the affair and supported by their respective corroborating witnesses. However we might have decided this crucial question of fact if we disregarded the decision of the District Judge, it is evident that he accepted the theory of the defendant on that question; and this is so stated by defendant's counsel and not denied by plaintiff's counsel.

In view of all the evidence supporting that theory we cannot say that the District Judge manifestly erred; and in such case it is well settled that we should not reverse his decision.

See first Louisiana Digest, page 591, section 625, citing a very long list of decisions on the principle.

"Judgment based upon facts will not be disturbed on appeal unless clearly erroneous".

While not, of course, exactly the same, yet the facts in this case are sufficiently similar to the facts in the following cases to make the ruling in those cases applicable, those rulings being against the plaintiff on the ground of contributory negligence.

Legendre vs. Consumers, etc. Co., 147 La. 122, 84 South, 517, where the syllabus is:

"Where both parties are negligent, the damages save in admiralty are not shared, unless one of such parties, notwithstanding the negligence of the other, might have avoided the injury".

Roder vs. Legendre, 147 La. 297, 84 South. 787, where the syllabus is:

"Plaintiff who attempted to cross street to take a street car on a dark and rainy night after having seen automobiles approaching at a distance of a block and a half, without looking for approaching automobiles, after having left curb, was contributorily negligent."

Collier vs. Varino, 153 La. 636, 96 South. 500, where the syllabus is:

"Even though driver of truck was driving at excessive speed and did not give signal of his approach, contributory negligence of one waiting for street car, in suddenly stepping in front of the truck, held the proximate cause of his death, as driver was deprived of last clear chance of preventing the collision."

Friedman vs. N. O. Ry. & Light Co., 153 La. 954, 96 South, 821 where the syllabus is:

"When contributory negligence of one struck by street car continues up to happening of the accident and motorman had no chance to avoid the accident after danger became apparent, the doctrine of last clear chance is inapplicable."

Without analysing decisions, they settle the doctrine that where the negligence of both parties concurs in producing the injury the consequences (except in admiralty) are not shared between them but the injury remains where it falls. This doctrine is subject to the exception that if notwithstanding the negligence of one party the other by the exercise of ordinary diligence can avoid the injury or the infliction of the injury and fails to do so, he alone must bear the consequences. This is called the doctrine of the last chance; but we find this doctrine without application in this case, because if the incident happened as defendant and his witnesses claim it did, Cicardo had no chance to save the situation after seeing the danger.

The decision of the lower court is therefore affirmed.