273 So.2d 566 (1973)
Letha Mae Searcy CRUM et al.
v.
HOLLOWAY GRAVEL COMPANY, INC., et al.
No. 9081.
Court of Appeal of Louisiana, First Circuit.
February 1, 1973.
Rehearing Denied March 14, 1973.
Writ Refused May 7, 1973.
*567 H. Alva Brumfield, Baton Rouge, for appellant.
Boris Navratil, Breazeale, Sachse & Wilson, Baton Rouge, for appellee.
Before LANDRY, TUCKER and PICKETT, JJ.
LANDRY, Judge.
This appeal by Plaintiff, Letha Mae Searcy Crum (Appellant), is from a judgment rejecting the wrongful death action instituted by Appellant, individually (as widow of John Floyd Crum, deceased), and for the use and benefit of Appellant's seven minor children, issue of Appellant's marriage to decedent. We affirm upon finding that decedent's contributory negligence bars plaintiff's recovery herein.
At the time of his death, decedent was in the employ of South Shore Railway Company (South Shore). South Shore was in the business of mining gravel by means of a barge mounted hydraulic dredge powered by electricity. Decedent was engaged as dredge operator. As such, decedent was in control of the dredge and supervised a single assistant, Walter Matthews, a deckhand. On the night of July 14-15, 1966, decedent was in charge of Dredge #1, located in an artificial pond or lake adjacent to Thompson's Creek. West Feliciana Parish. At approximately 3:00 A.M., decedent fell from a skiff while wielding an axe to dislodge tree limbs which interfered with the dredge's intake mechanism. Decedent, who could not swim, drowned. The dredge in question, as well as numerous other pieces of equipment used in hydraulic gravel mining, was leased to South Shore by Holloway Gravel Company, Inc. (Holloway) on December 31, 1964.
On July 11, 1967, Appellant sued Holloway and its insurer, Travelers Insurance Company, alleging Holloway was negligent in not providing the dredge and skiff with life preservers and safety and first aid devices. Holloway answered asserting its lease to South Shore, and the latter's assumption of full responsibility for all claims resulting from operation of the leased equipment. Alternatively, Holloway plead decedent's contributory negligence and assumption of risk. Holloway third partied South Shore and its insurer, Great American Insurance Company (Great American). Both said third party defendants answered denying liability, and alternatively pleading contributory negligence and assumption of risk on decedent's part. South Shore also seeks recovery from Holloway of workmen's compensation benefits paid Appellant if Holloway is held liable in tort. On February 5, 1969, H. H. Holloway, Charles Holloway and Stuart Johnson (officers and executives of both South Shore and Holloway) were made defendants, as executives of Holloway only, as was their insurer, Continental Insurance Company. Among other peremptory exceptions, said individual defendants filed pleas of one year's prescription. Alternatively, said individuals plead decedent's assumption of risk and contributory negligence.
In essence the trial court made the following findings and rendered decrees which: (1) Held South Shore liable for workmen's compensation benefits only; (2) Exonerated Holloway from tort liability on the ground subject dredge was shown to have been fully equipped when leased to South Shore, and also because the lease transferred to lessee full responsibility for operation and maintenance of the dredge during the lease period; (3) Relieved H. H. Holloway and Charles Holloway of liability on the ground that neither had actual control or supervision of the leased *568 dredge; (4) Cleared Stuart Johnson of liability on the ground that if he was negligent as a supervisor in failing to provide the dredge with safety equipment, recovery by plaintiff was barred because of decedent's own contributory negligence and assumption of risk; (5) Sustained the pleas of one year's prescription filed by H. H. Holloway, Charles Holloway and Johnson, on the ground that, if they were tort-feasors, they were not solidarily bound with Holloway, consequently filing of the suit against Holloway within one year of decedent's death did not interrupt the running of prescription against these individual defendants, and (6) Held that, in any event, plaintiff's claims in tort were barred as against all defendants because of decedent's contributory negligence and assumption of risk.
The record establishes that prior to 1965, decedent had been employed by South Shore as a dredge deckhand, and had worked his way up to the position of dredge operator or shift foreman. In 1965, decedent left South Shore to do similar work for a competitor. In June, 1966, decedent returned to South Shore as a dredge operator and shift foreman. Decedent was then assigned to Dredge #1, which was one of three similar dredges then being operated by South Shore pursuant to lease from Holloway. On the date of the accident, the dredge was floating in a manmade pond from which gravel was being mined. As shift foreman, decedent was in charge of the dredge, and also supervised the activities of the other member of the crew, Walter Matthews, a deckhand. Although decedent could not swim, he did not make this fact known to anyone. As shift foreman, it was decedent's duty to assume full control and operation of the dredge. Decedent was also required to make such minor repairs as he could handle. Any repairs beyond decedent's capacity were reported to decedent's immediate supervisor, Dewitt Jenkins, South Shore's Foreman. There were no handrails around the barge. As shift foreman, decedent operated the dredge from an enclosed room which housed the dredge's motor and controls. The hydraulic mechanism consisted, among other apparata, of a large suction pipe which extended into the water approximately 30 feet ahead of the barge. The pipe formed a conduit through which gravel was mined by way of a suction force provided by machinery aboard the barge. The exterior of the barge was equipped with flood lights which illuminated both the barge and the area into which the open end of the suction pipe extended. It was the duty of the deckhand to oil machinery, operate mechanisms to change the location of the suction pipe when necessary, and keep the open end of the suction pipe free from trash and debris so that it would not become clogged.
Part of the dredge's equipment consisted of a metal skiff or flat boat which was approximately four to five feet wide and about twelve to fourteen feet in length. The skiff was used to transport the crew to and from the bank to the floating dredge. It was also used by the deckhand in clearing the end of the suction pipe when necessary. Each end of the skiff was equipped with a small flat deck approximately 4 feet long, with a well in between. The skiff was provided with oars by which it was manually propelled. Decedent's duties were limited to working aboard the dredge. He was not required to remove debris from the suction pipe, this task being exclusively that of the deckhand. It is virtually conceded that at the time of the accident, there were no life preservers aboard either the dredge or the skiff.
Walter Matthews, the only other person present when decedent drowned, testified that at about 3:00 A.M. on the morning in question, the open end of the suction pipe became partially clogged with tree limbs. Decedent observed that Matthews had been working hard all night, and for this reason, decedent volunteered to clear the pipe himself. Matthews reminded decedent that it was Matthews' job to clear the pipe, but *569 decedent refused to let Matthews perform the task, and insisted that decedent would do the work. Decedent then took the skiff which was tied to the dredge, and paddled to shore to get an axe from decedent's truck parked on the nearby bank. Decedent then rowed out to the end of the suction pipe. Standing on the small deck at the front end of the skiff, decedent began chopping at the exposed limbs. Decedent successfully chopped one limb, and while in the act of chopping another, he made a swinging motion with the axe. Apparently this motion cut completely through the limb causing decedent to fall into the water. Decedent, who was not wearing any form of life preserver, yelled for help. Matthews, who himself could not swim, sought some object to throw to decedent for aid, but could find nothing whatsoever, not even a rope, life preserver or board. When decedent fell into the water, the skiff drifted away from decedent and out of reach of Matthews on the dredge. Matthews then walked a pipe line from the dredge to the bank and reported the accident.
The circumstances regarding the absence of life preservers and other similar devices aboard the dredge and skiff were disclosed primarily by Dewitt Jenkins, foreman for South Shore, and Stuart Johnson, General Manager for both Holloway and South Shore. Jenkins testified he was foreman for South Shore and, as such, supervisor of the dredges. Although he had seen life preservers aboard the dredge and skiff in question on previous occasions, there were none on board on the date of the accident. He also testified as to the difficulty in getting the crew to wear life preservers or jackets notwithstanding his constantly reminding them to wear the devices for their own safety and protection. He was unaware that decedent could not swim. He also noted that it was difficult to keep life preservers on board because such devices were often not returned when used by the crews, or were used for pillows or other purposes for which they were not intended. Jenkins also stated that following the accident, life preservers were provided on the dredge in question.
Stuart Johnson testified that he had general supervision of all equipment being operated by South Shore in the area in question. He inspected the dredges at varying intervals, having no set routine in this regard. He could not recall his last inspection of the dredge in question prior to the accident. He was not aware Dredge #1 had no life preservers aboard, but was so informed following the accident. Since the accident, life preservers were purchased and put aboard the dredge in question. He too noted the difficulty in keeping the dredges and skiffs provided with life preservers which disappeared from time to time. Johnson also stated that, whenever requested to do so, he purchased life saving and safety equipment. He further noted that South Shore's records would show such purchases, but would not show the dredge or other vessel in which it was placed or used.
Appellant maintains the trial court erred in (1) finding the dredge was equipped with life preservers on the date it was leased by Holloway to South Shore, and thereby exonerating Holloway and its executive officers from liability on the ground they breached no duty owed decedent, and (2) failing to employ the doctrine of comparative negligence upon finding that decedent was guilty of contributory negligence constituting a proximate cause of his death.
We pretermit all consideration of Appellant's contention that defendants were guilty of negligence in breaching a duty owed decedent to properly equip the dredge and skiff with life preservers and safety devices. Assuming, for argument's sake, defendants were negligent in this respect, nevertheless Appellant's recovery is barred by decedent's contributory negligence as held by the trial court.
As regards the issue of contributory negligence, we find no merit in Appellant's *570 contention that the doctrine of comparative negligence is applicable in tort cases pursuant to LSA-C.C. art. 2323. In support of this position, counsel for Appellant relies upon Stone, Tort Doctrine in Louisiana, 27 Tulane Law Review, 1, and authorities cited therein.
The common law doctrine of comparative negligence, which permits recovery by a negligent plaintiff, has long since been rejected by our jurisprudence. As early as 1910, our Supreme Court stated in Belle Alliance Co., Limited v. Texas & P. Ry. Co., 125 La. 777, 51 So. 846, that: "Our Brethren have applied the doctrine of comparative negligence, which ... has never obtained in this state ...." See also, Legendre v. Consumers' Seltzer & Mineral Water Mfg. Co., 147 La. 120, 84 So. 517.
Contributory negligence is an affirmative defense which must be established by the pleader by a preponderance of evidence. King v. King, 253 La. 270, 217 So.2d 395 (1968).
Contributory negligence is conduct on the part of a plaintiff in a tort action which falls below the norm or standard to which a reasonable person should conform for his own safety and protection. Campbell v. American Home Assurance Company, 260 La. 1047, 258 So.2d 81. It is basic law that application of the foregoing principle is a question of fact which must be determined in the light of the circumstances of each individual case.
In this instance, we find that, notwithstanding the laudable motive expressed by decedent whose aim was to lighten the burden of his fellow man, decedent was guilty of gross contributory negligence under the circumstances. Although decedent could not swim, he nevertheless voluntarily, without any job compulsion, undertook performance of a task completely outside the scope and range of his duties. He left a place of comparative safety aboard the dredge and entered alone a small boat to undertake a hazardous task. To compound his error, decedent undertook performance of the chore in the most hazardous manner. He was aware he could not swim, yet made no attempt to take the precaution of searching for a life preserver or some such similar device he might make use of if an emergency arose during the course of his intended activity. Additionally, without the protection of any life saving device whatsoever, he assumed a standing position on the small platform situated at the bow of the skiff and commenced chopping at partially sunken limbs with an axe. Such conduct, to a person who could not swim, was fraught with danger, and rendered the likelihood of an accident highly imminent. Under the circumstances, decedent's conduct fell far short of that degree of care which a reasonably prudent individual is expected to exercise for his own safety and protection.
The judgment of the trial court is affirmed; all costs to be paid by Appellant.
Affirmed.