366 So.2d 1044 (1978)
Nanette Renee HEBERT, Plaintiff-Appellant,
v.
MARYLAND CASUALTY COMPANY, Baton Rouge Area Chamber of Commerce and Dewayne Stroughter, Defendants-Appellees.
No. 12347.
Court of Appeal of Louisiana, First Circuit.
December 27, 1978.
Rehearing Denied February 12, 1979.
*1045 Arthur Cobb, Baton Rouge, of counsel for plaintiff-appellant Nanette Renee Hebert.
John S. White, Jr., Baton Rouge, of counsel for defendant-appellee Baton Rouge Area Chamber of Commerce and Maryland Casualty.
William C. Bradley, Baker, of counsel for defendant-appellee Dewayne Stroughter.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
SARTAIN, Judge.
Nanette Renee Hebert brought suit against Dewayne Stroughter, the Baton Rouge Area Chamber of Commerce (Chamber of Commerce) and its insurer Maryland Casualty Company to recover for injuries she sustained when she was kicked in the leg by a horse owned and ridden by Stroughter. The accident occurred while she and Stroughter were participating in a parade sponsored by the Chamber of Commerce. The district court held for the defendants. Plaintiff appeals.
On March 6, 1976, the Chamber of Commerce held the Rodeo Round-Up Parade through downtown Baton Rouge. Bands, floats and some three hundred fifty horses organized into twenty-four mounted units participated. The Chamber of Commerce appointed four or five marshals to supervise the assembling of the mounted units. The executive vice-president of the organization testified that the parade sponsor in large part relied upon the riding groups to maintain order within their units and to exclude horses unsuitable for parade participation.
Miss Hebert, an experienced horsewoman, rode in the parade as a member of the East Baton Rouge Parish Sheriff's Posse. When the parade route had been completed and the mounted groups were returning to the area where their trailers were located, Miss Hebert and her friend Debbie Jones left their unit and rode ahead, passing several groups. Stroughter was riding his stallion in formation in the last line of the Baker Mounted Police Posse when Miss Hebert and Miss Jones approached from his rear. Stroughter's stallion suddenly kicked with his two rear legs, one hoof hitting Miss Hebert's right leg. Miss Hebert and Miss Jones were the only witnesses to the incident. Stroughter was facing forward and did not actually see the kicking.
Although there was testimony to the contrary, the trial court found that Miss Hebert *1046 was walking her horse when the accident occurred; that she did not precipitate the kicking by bumping into Stroughter's stallion; but that the kicking was caused by her close approach to the horse from the rear. There being no manifest error, we adopt these findings of fact. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
The testimony of several experts on horse behavior established that many horses kick as an instinctive defense mechanism when they feel threatened by something behind them. Despite Miss Hebert's disclaimer of such knowledge on her part, this characteristic was described as well known among people who had dealt with horses.
Expert testimony further revealed that as a rule stallions are more spirited and intractable than mares and geldings. Stroughter testified that his particular stallion was a well-mannered horse, which shortly before the rodeo parade had been ridden in a horse show by a twelve year old girl. He had ridden the horse in two other parades prior to the accident. Stroughter stated that he had never known his horse to bite or kick at anyone. Two other witnesses who were familiar with the stallion testified to the same effect.
According to Stroughter's testimony, his horse was well-behaved throughout the rodeo parade until the accident with Miss Hebert. The leader of Stroughter's unit said he was unaware of any trouble with the horse during the parade activities. However, one of plaintiff's witnesses claimed to have seen the stallion kick in his direction when he rode past it before the parade began.
Plaintiff's claim against the Chamber of Commerce is based upon Civil Code articles 2315 and 2316. While plaintiff now concedes that the Chamber of Commerce had no knowledge of any dangerous propensities in the stallion, she firmly maintains that the parade sponsor was negligent in failing to provide more marshals to supervise the parade activities. She argues that had there been a sufficient number of marshals the horses would have been screened more carefully and Stroughter's stallion would have been found to be unfit to participate.
It is not necessary to determine if the actions of the Chamber of Commerce were negligent in order to dispose of plaintiff's claim. Factual causation is a necessary element in an action for negligence, Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976); Follins v. Barrow, 354 So.2d 609 (La.App. 1st Cir. 1978), writ refused, 356 So.2d 434, and plaintiff has failed to show that the allegedly substandard conduct of this defendant was the cause-in-fact of her injury.
In Dixie Drive It Yourself System v. American Beverage Co., 137 So.2d 298 (La. 1962), the Supreme Court stated that conduct is a cause-in-fact of harm if it is a substantial factor in bringing about that harm.
We are not convinced that additional marshals would have resulted in the removal of Stroughter's stallion from the parade. The only evidence of misbehavior by the horse prior to the accident concerned the horse's kicking once before the parade began. But even if a marshal had witnessed this incident, we do not believe the horse would have been removed from the parade. The evidence in the record on this horse's training and general deportment convinces us that the horse would have passed the more thorough screening that additional marshals might have instituted. We conclude that the failure of the Chamber of Commerce to provide more marshals was not a cause-in-fact of the harm that befell plaintiff.
Miss Hebert's claim against defendant Stroughter is based on Civil Code article 2321,[1] as interpreted by the Supreme Court in Holland v. Buckley, 305 So.2d 113 (La.1974), wherein it was said:

*1047 "We hold, therefore, that the correct interpretation of Civil Code Article 2321 is as follows: When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event." (footnotes omitted)
Stroughter does not dispute the applicability to him of the strict liability doctrine of Holland v. Buckley. He contends, however, that he has rebutted the presumption of fault by showing that Miss Hebert's injury was caused by her own fault.
We agree with the trial court's finding that it was Miss Hebert's action in crowding the stallion from its rear that caused the horse to kick. Left to be determined is whether her conduct constitutes fault.
Miss Hebert testified that as she approached the Baker Mounted Police Posse from the rear she was paying very little attention to the stallion to her right front. She readily admitted that she came within kicking distance of an unfamiliar horse without turning her head to observe it. In view of the testimony in the record on the kicking tendencies of horses and the wide spread knowledge of this characteristic, we conclude, as did the trial court, that Miss Hebert's inattentive approach to a position within kicking distance of the rear of an unfamiliar stallion fell below the standard of care to which a reasonable person should conform for his own safety and protection. Dupas v. City of New Orleans, 354 So.2d 1311 (La.1978); Crura v. Holloway Gravel Co., 273 So.2d 566 (La.App. 1st Cir. 1973), writ denied 276 So.2d 701. Her contributory negligence, i. e., fault of the victim, bars her recovery from Stroughter. Holland v. Buckley, supra; Parker v. Hanks, 345 So.2d 194 (La.App. 3d Cir. 1977), writ denied 346 So.2d 224; Dotson v. Continental Insurance Co., 322 So.2d 284 (La.App. 1st Cir. 1975), writ denied 325 So.2d 606 (1976).
For the reasons set forth above, the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Art. 2321. The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment.