347 So.2d 274 (1977)
Joseph C. CORCELLER, Jr. and Rellecroc, Inc.
v.
John H. BROOKS, Laborde & Brooks and St. Paul Fire & Marine Insurance Company.
No. 8030.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 1977.
Rehearing Denied June 30, 1977.
*276 Koerner, Babst & Lambert, Louis R. Koerner, Jr., Stephen M. Bernstein, New Orleans, for plaintiffs-appellants.
Wiedemann & Fransen, A. Remy Fransen, Jr., Raul R. Bencomo, New Orleans, for defendants-appellees.
Before GULOTTA, STOULIG and SCHOTT, JJ.
GULOTTA, Judge.
In this legal malpractice suit, plaintiff[1] appeals from the dismissal, after jury trial, of his claim for damages. Alleged as causes of the damages are the attorney's improvident advice resulting in an injunction suit being filed against plaintiff; the attorney's failure to timely answer the petition for injunction and damages causing a default money judgment to be taken against plaintiff; in an unrelated matter, defendant's dereliction resulting in a deficiency judgment being rendered against plaintiff; and defendant's failure to refund or otherwise account for $1,250.00 advanced by plaintiff for court costs and travel expenses.[2]
The undisputed facts are that plaintiff operated a Bonanza Pit Restaurant beginning in early May, 1970, pursuant to a franchise agreement with Bonanza International. According to the contract, plaintiff was required to pay a certain percentage of his gross receipts on a weekly basis as royalties and was obligated to submit weekly accounting reports. In November of the same year, plaintiff received a letter from Bonanza International advising him to remove any references to the Cartwright television series theretofore associated with the Bonanza franchise. Corceller then consulted defendant Brooks for legal advice concerning his rights and obligations under the franchise agreement.
The following chronology is helpful.

First week of Corceller and Brooks discussed
April 7, 1971 the possibility of filing a suit
 to rescind the franchise agreement
 in order that Corceller might recover
 his initial investment in
 the restaurant and the royalties
 which he had paid.
April 7, 1971 As a result of their discussion,
 Corceller paid to Brooks the sum
 of $1,250.00 to cover the costs
 and travel expense incurred in
 filing the proposed suit.
April 20, 1971 Brooks filed suit on behalf of
 Corceller in a state court.[3]
August 24, 1971 Bonanza International's attorney
 made demand for past due royalties
 and reports.[4]
September 7, 1971 Bonanza International cancelled
 the franchise due to the nonpayment
 of royalties.
September 17, 1971 Bonanza International filed suit
 in U.S. District Court requesting
 an injunction against plaintiff's
 operation of the franchise and
 seeking a claim for damages.[5]
October 28, 1971 The Federal Court issued a preliminary
 injunction ordering plaintiff
 to discontinue use of any Bonanza
 trademarks and to cease
 operation of a low-cost steak restaurant

*277
 within a 25-mile radius of
 the existing outlet.
June 8, 1972 The Federal Court found Corceller
 in contempt of its injunction.
August 9, 1972 Bonanza filed a request for a
 "clerk's default" on the damage
 aspect of its suit.
August 15, 1972 Defendant was relieved of possession of the Corceller file.
August 21, 1972 The Federal judge ordered the
 default judgment.
October 18, 1972 During the hearing at which Corceller did not appear, the
 Federal judge rendered damages in favor
 of Bonanza. The default judgment and damages rendered were
 affirmed on appeal. Following the default judgment for damages
 against plaintiff, this action
 in legal malpractice was filed.

In answers to interrogatories, the jury found: 1) . . .; 2) that defendants represented plaintiff at the time the alleged loss was sustained; 3) that defendants warranted or guaranteed a favorable result to their representation of plaintiff which was not obtained; 4) that defendants were negligent in their representation of plaintiff; 5) that their negligence was a proximate cause of injury and damage to plaintiff; 6) however, that plaintiff was guilty of contributory negligence and/or assumption of risk.
Plaintiff assigns as error the following: 1) that the trial judge, in his charge to the jury, erroneously gave instructions on negligence, contributory negligence and assumption of risk. Plaintiff claims his cause of action is based on breach of contract and not tort. In this connection, plaintiff claims that the attorney's failure to produce the result warranted by him constituted a breach of contract. Corceller points out that in answer to an interrogatory, the jury found that Brooks warranted or guaranteed a favorable result in his representation of plaintiff which was not obtained; 2) that, even assuming plaintiff's claim sounds in tort, the trial judge erred in failing to charge the jury on comparative negligence; and finally, 3) that the trial judge erred in failing to furnish interrogatories to the jury which separated each of plaintiff's several claims from the others. According to Corceller, the defense of comparative negligence or contributory negligence may have been applicable to those claims which are based on a tort but are clearly not applicable to aspects of his complaint based on breach of contract.
At the outset, we find no merit to plaintiff's contention that this malpractice suit is one based on breach of contract. Though it is true that a contractual agreement between Corceller and Brooks established the attorney-client relationship, this contract of employment merely gave rise to the attorney's legal duty "to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality". Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So.2d 239, 244 (1972). As the Louisiana Supreme Court stated therein:
"The risk of the expenditure of sums of money for costs of litigation, including attorney's fees, directly flowed from the breach of the duty owed by the attorneys to these plaintiffs. Therefore the defendant attorneys were negligent in their acts and omissions toward the plaintiffs, and that negligence was the cause of the damage suffered by them."
We are mindful of our decisions dealing with medical malpractice, Barrios v. Sara Mayo Hospital, 264 So.2d 792 (La.App. 4th Cir. 1972) and Creighton v. Karlin, 225 So.2d 288 (La.App. 4th Cir. 1969), wherein we stated that an injured plaintiff may sue a professional in tort or in contract from a breach of implied warranty to perform his services in conformity with community standards. Nevertheless, in such cases, this breach of warranty is, in effect, the negligence of a professional that act or omission which is below the standards of similar practitioners in the community.
Warranty or guarantee by an attorney of a particular result of a litigious claim is foreign to the nature of the legal profession.[6] This is not to say that we *278 cannot conceive that an attorney may guarantee that he will follow a particular course of action or do a specific thing on the client's behalf. However, because the dispute between Corceller and Bonanza involved litigious rights, the attorney for Corceller could not have warranted or guaranteed a result favorable to plaintiff. Under the circumstances, we conclude the trial judge erroneously charged the jury on "warranty or guarantee of a favorable result" and erroneously included an interrogatory to the jury on defendants' failure to obtain a warranted favorable result. We further conclude, however, that the error is not reversible but harmless, particularly in view of the jury's findings of negligence and contributory negligence.
We find no merit further to plaintiff's contention that the doctrine of comparative negligence (based on LSA-C.C. art. 2323[7] rather than contributory negligence should be applied in malpractice cases. Our jurisprudence has consistently rejected application of the comparative negligence doctrine. See Crum v. Holloway Gravel Company, Inc., 273 So.2d 566 (La. App. 1st Cir. 1973), writ refused, 276 So.2d 701 (La.1973); Belle Alliance Co. v. Texas and P. Ry. Co., 125 La. 777, 51 So. 846 (1910); Legendre v. Consumers' Seltzer & Mineral Water Mfg. Co., 147 La. 120, 84 So. 517 (1920). Plaintiff's argument in this respect might be more appropriately made before the Louisiana Supreme Court.
We do find merit, however, to plaintiff's argument that the interrogatories submitted to the jury should have been structured to allow separate consideration of each of plaintiff's claims. Having found negligence on the part of the defendant proximately causing injury to plaintiff, the jurors were confronted with interrogatory no. 6 which they answered in the affirmative:

INTERROGATORY 6.
"Was plaintiff Joseph C. Corceller, Jr. guilty of contributory negligence and/or assumption of risk?
YES √ NO_____
"If your answer is `YES,' you will return a verdict for defendants.
"If your answer is `NO,' you will return a verdict for plaintiff, Joseph C. Corceller, Jr. and against defendants, find the amount of plaintiff's damages and return a verdict in that amount."
Though the trial judge in his charge instructed the jury to consider plaintiff's claims separately, the interrogatory did not define those claims to which contributory negligence and assumption of risk are responsive defenses. Absent this differentiation, the jury could not have known which of plaintiff's claims are subject to the defense of contributory negligence and assumption of risk and which of those claims are not.
It is true that the defense of contributory negligence is applicable to plaintiff's claims relating to the termination of the franchise, the injunction and the default judgment in favor of Bonanza.[8] Assumption of risk, however, is not a viable defense in the instant case. Corceller's contempt of the Federal Court injunction and his failure to pay the royalties to Bonanza are proper factual questions to be considered by the jury in the determination of the question of contributory negligence. We do not feel that this conduct falls within the category of assumption of risk. We conclude, therefore, that interrogatory no. 6 erroneously included the words "assumption of risk". Again, we conclude that the error, in this respect, is not reversible but harmless. The record clearly supports a factual conclusion that Corceller's contempt of the Federal Court injunction and his failure to *279 pay the royalties contributed to the termination of the franchise, the issuance of the injunction and the default money judgment.
The defense of contributory negligence, however, is not applicable to Corceller's claim either for a return and/or an accounting of the $1,250.00 advance covering court costs and expenses or to the deficiency judgment in favor of National Cash Register. As pointed out, plaintiff's acts which defendants argue constitute contributory negligence and assumption of risk are his financial inability to pay the royalty charges, his evasive testimony at the injunction hearing resulting in the granting of the injunction and his contempt of the injunctive order of the Federal Court resulting in the deficiency judgment against him in that court. These defenses are not applicable and facts supporting these defenses were not even asserted in connection with the claims for return of the advanced court costs and the cash register deficiency judgment.
According to the Code of Civil Procedure and the jurisprudence, the trial judge has the discretion to submit a case to the jury on special interrogatories but is not required to do so.[9] Nevertheless, in a matter involving a cause of action in which several claims are asserted to which different defenses are responsive, the trial judge, in order to assist the jury in its deliberation, should direct interrogatories to the jury which would allow a separate jury finding on each claim and on the defense applicable to that claim.
Accordingly, we conclude the trial judge erred in the instant case in failing to include an interrogatory defining those claims asserted by plaintiff to which contributory negligence is a viable defense and those claims to which this defense is not applicable.
No useful purpose would be served in remanding this matter to the trial court where the record contains evidence sufficient to dispose of the matter in this court. See Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975); Morgan v. Liberty Mutual Insurance company, 323 So.2d 855 (La. App. 4th Cir. 1975).
Our review of the evidence leads us to a conclusion that the record supports the jury's finding of negligence on the part of defendant Brooks. Corceller testified that Brooks had advised him in early January, 1971, to discontinue paying royalties and submitting accounting reports. This testimony was refuted by Brooks. Though we are unaware of the reason for the jury's finding of negligence on the part of defendant, it is reasonable that the jury concluded Brooks advised Corceller to discontinue the royalty payments and that nonpayment permitted Bonanza International to invoke the termination clause of the franchise contract. Further, a reasonable basis exists for the jury's determination that defendant failed to file timely an answer to Bonanza's claim for damages in the Federal Court. Though defendant testified that an oral agreement existed between him and the Bonanza attorneys that no default would be taken, his statement was inconsistent with those of the Bonanza attorneys who testified that no such agreement existed. The evidence indicates that defendant simply failed to file an answer prior to the clerk's entry of a default which the Federal trial judge refused to set aside.
Again, though the record fails to disclose the reason for the jury's finding of contributory negligence, there exists evidence from which the jury could have reasonably concluded that plaintiff was experiencing extreme financial difficulty prior to January, 1971, and for this reason plaintiff was unable to make the royalty payments. Evidence supports a conclusion by the jury that plaintiff's own penury was a cause of the termination of the franchise and Bonanza's injunction against him.
*280 The jury could have reasonably concluded also that plaintiff's contempt of the Federal Court injunction led to his downfall. Evidence taken at contempt hearings in Federal Court indicates that plaintiff refused to discontinue the use of the Bonanza trademarks. Despite the Federal Court order, he continued to operate a low-cost steak restaurant in violation of the injunction. His contemptuous action constituted grounds for the Federal Court's refusal to set aside the default.[10] Accordingly, his contributory negligence in these respects does not permit him to recover for damages resulting from the termination of the franchise and the adverse Federal Court judgment.
Turning now to plaintiff's claim against defendant on the deficiency judgment rendered in the NCR matter, we conclude Corceller failed to show by a preponderance of the evidence that Brooks was negligent. The sole testimony on this claim was given by Phillip T. Hager, a former associate of Brooks who handled the cash register problem. According to Hager, Corceller's son telephoned him and informed him that NCR was about to seize the cash register under executory process. Corceller's son was seeking an extension of time in which to use the register until a replacement could be obtained. Hager made an agreement with an opposing attorney and a five-day extension was granted. Corceller obtained a new cash register from another source and the NCR machine was seized. Following the sale of the machine, NCR obtained a deficiency judgment against Corceller.
Though plaintiff asserts that the attorney's improper handling of the matter caused the adverse judgment, no evidence was introduced by plaintiff to show that NCR would have accepted the return of the cash register alone in settlement of Corceller's obligation to pay the purchase price. There is no indication in the record that NCR was willing to forego its right to have the machine seized by the sheriff under executory process. Accordingly, we find no proof in the record supporting plaintiff's claim of defendant's negligence in connection with the NCR seizure.
Finally, we conclude plaintiff is entitled to the return of the $1,250.00 advanced to defendant for court costs and other expenses. Receipt of the amount is admitted by defendant; however, he characterizes the check as "a retainer" given to him at the inception of plaintiff's state court suit. Evidence is lacking to support this contention. Plaintiff testified the sum was paid on April 7, 1971, to cover anticipated travel expenses in prosecuting the suit. Corceller stated that he himself bore the cost of all expenses during a trip taken by Brooks and him to Dallas where the discovery deposition of a Bonanza executive was obtained.
In brief and oral argument on appeal, defendant asserts the doctrine of quantum meruit in extinguishment of the obligation for return of the deposit. We reject this argument. The affirmative defense of the "extinguishment of the obligation in any manner" must be affirmatively pleaded. See LSA-C.C.P. art. 1005. This defense was not pleaded in the instant case. Under the circumstances, we conclude that plaintiff is entitled to the return of the sum of $1,250.00.
Defendant asserts as a bar to plaintiff's claim a release executed by plaintiff upon receipt of the sum of $ 8,500.00 from Bonanza International and others in connection with a settlement between those parties. Because of the result reached, no necessity exists for consideration of the effect of the *281 release on the claims asserted by plaintiff. Our judgment in favor of plaintiff on the issue of the $1,250.00 advance payment has no relationship to that release.
Accordingly, the judgment of the trial court dismissing plaintiff's suit on all claims, with the exception of his claim for costs advanced, is affirmed. That part of the judgment denying to plaintiff recovery of the $1,250.00 advance in costs is reversed and set aside. Accordingly, judgment is amended and cast as follows: Judgment is now rendered in favor of plaintiff and against defendants in the sum of $1,250.00, together with interest from date of judicial demand. In all other respects, plaintiff's claim is denied. Costs to be paid by plaintiff.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] The claim by plaintiff Rellecroc, Inc. against defendant attorney and his liability insurer has been abandoned.
[2] Damages alleged by plaintiff, in addition to the claim for advanced costs, include: loss resulting from the deficiency judgment; additional attorney's fees expended in attempting to correct the default judgment; physical disability, loss of earnings, embarrassment, humiliation, grief, mental anguish on account of injunctive proceedings; loss of patrimony; adverse publicity; and loss of assets.
[3] "Joseph C. Corceller, Jr. and Rellecroc, Inc. v. Bonanza International", No. 134-381 on the docket of the 24th Judicial District Court.
[4] The last royalty payment and accounting had been made on January 3, 1971.
[5] "Bonanza International, Inc. and Stewart Investments, Inc. v. Joseph Charles Corceller, Jr.", C.A. No. 71-2594 on the docket of the United States District Court for the Eastern District of Louisiana.
[6] See: Professor Litvinoff's treatise on obligations. La. Civil Law Treatise, Vol. 7, Sec. 182.
[7] LSA-C.C. art. 2323 reads as follows:

Art. 2323. Computation of damages
"Art. 2323. The damage caused is not always estimated at the exact value of the thing destroyed or injured; it may be reduced according to circumstances, if the owner of the thing has exposed it imprudently."
[8] See 7 Am.Jur.2d, Attorneys at Law § 167; Theobald v. Byers, 193 Cal.App.2d 147, 13 Cal. Rptr. 864, 87 A.L.R.2d 986, Cal.Dist. Court of Appeal, hearing denied by Supreme Court of California, 1961.
[9] LSA-C.C.P. arts. 1811, 1812; Mulkey v. Aetna Casualty & Surety Company, 210 So.2d 897 (La.App. 1st Cir. 1968); Hocut v. Insurance Company of North America, 254 So.2d 108 (La.App. 3d Cir. 1971), writ denied, 260 La. 411, 256 So.2d 292 (1972).
[10] As the Fifth Circuit Court of Appeals stated in Bonanza International, Inc. v. Corceller, 480 F.2d 613, 614 (1973), affirming the default judgment:

"There is evidence, moreover, that defendant [Corceller] refused to obey the Court's orders, and such action constitutes sufficient grounds for a default judgment. * * *
"Defendant [Corceller] elected not to appear at a full hearing on the question of damages [subsequent to termination of defendant's employment]. Damages awarded pursuant to default cannot be questioned for the first time upon appeal. * * *"