UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-31360
_____

CURB RECORDS,

                                        Plaintiff-Appellant,

                        versus

ADAMS & REESE L.L.P.; RICHARD
GOINS; ATTORNEYS LIABILITY
ASSURANCE SOCIETY, INC.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(96-CV-2908-T)
_____

November 29, 1999

Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges.

PER CURIAM:[*]

    This legal malpractice case presents a question that will be
of interest to most lawyers: What duty does local counsel have to
bypass lead counsel and report directly to the client instances of
lead counsel's misfeasance?

    The plaintiff, Curb Records, Inc. ("Curb"), appeals the
summary judgment in favor of the defendants, Adams & Reese, L.L.P.,
Richard Goins (collectively, "Goins"), and Attorneys Liability
Assurance Society, Inc.  This cause of action arises out of a prior
copyright action in which Curb's lead counsel, Peter Strong of the

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

California bar, hired Goins as counsel of record as required by local rules. Strong specifically instructed Goins that his role was limited to filing and forwarding pleadings, discovery, and orders. Furthermore, he specifically instructed Goins not to deal directly with the client. During the course of the litigation, Strong, with the knowledge of Goins, failed to respond to a series of court ordered discovery requests. Informed by Strong that these failures were all part of a low profile litigation strategy, as merely the holder of the stake in the controversy, Goins took no action to inform the client. Ultimately, as a sanction, the court struck Curb's defenses to the underlying copyright action, forcing Curb into a very unfavorable settlement. Following settlement of the copyright claim, Curb filed the instant legal malpractice action against Goins. The district court granted Goins's motion for summary judgment, finding no basis for a malpractice claim. In doing so, it relied exclusively on general principles of contract and agency law in holding that, when local counsel has been specifically instructed by lead counsel to have no direct contact with the client, local counsel does not have a duty to inform the client of lead counsel's discovery defaults. Curb now seeks review of that ruling, arguing that Goins breached his professional duty of care under Louisiana law. We hold that, under Louisiana law, there is an inherent and nondelegable duty of care that requires local counsel to inform its client of any known malfeasance or misfeasance on the part of lead counsel, which, to an objective

2

reasonable attorney, would result in serious prejudice to the client's interests. Thus, the judgment of the district court is reversed and the case is remanded for further proceedings.

I

A

Curb is a Tennessee corporation engaged in the business of producing and distributing phonorecords containing various musical works. In 1990, it began to distribute a phonorecord entitled <u>Aaron Neville's Greatest Hits</u>. Curb obtained a mechanical license to reproduce some of the songs from Melder Publishing. Shortly after Curb began distributing the phonorecord, George Davis and various other songwriters filed a copyright infringement action against it and Melder Publishing in the United States District Court for the Eastern District of Louisiana (hereinafter "the <u>Davis</u> matter"). The songwriters contended that they owned the copyrights to nine of the ten songs contained on the phonorecord, and that they had not licensed their rights to either Curb or Melder Publishing. Earlier, upon having received notice of the dispute over the ownership of the copyrights, Curb began withholding royalty payments from Melder Publishing to avoid the risk of double payment.

Upon receiving notice of the infringement suit, Curb sought legal representation in the matter from Peter Strong, a California

attorney.[1]  Strong accepted the representation, but was required to associate local counsel.[2]  Curb empowered Strong to retain local counsel and authorized him to limit local counsel's authority as he saw fit.[3]  Strong contacted Richard Goins, a partner in the New Orleans, Louisiana law firm of Adams & Reese, L.L.P., who accepted the representation.  Strong instructed Goins that his role as local counsel would be limited to receiving discovery requests, pleadings and court orders, and forwarding them to Strong.  He also gave Goins the responsibility of filing and serving pleadings and documents, such as Strong might instruct.  Further, Strong explicitly instructed Goins that he was to have no direct contact with Curb.

---

[1]The record indicates that Carey J. C. Agajanian, a lawyer and personal advisor to Mike Curb, the owner of Curb Records, informed Strong that Curb had decided that it would simply cease payment of royalties to anyone pending the outcome of the litigation. Further, the legal strategy that Curb intended to pursue was to sit back and let the competing claimants to the copyrights resolve the matter among themselves.  Strong was thus instructed by Agajanian to do little or nothing in this case, because Curb was comfortable that any potential liability was capped by federal statute.

[2]Uniform Local Rule of the United States District Court for the Eastern, Middle, and Western Districts of Louisiana 83.2.5 states: "In all cases before this court, any party who does not appear in proper person must be represented by a member of the bar of this court, except as set forth below."  Id. at 83.2.5.  The Local Rules go on to delineate an exception for visiting attorneys who are admitted to the court to appear in a particular case pursuant to a motion by a member of the bar or upon the entry of an ex parte order by the court.  Id. at 83.2.6.

[3]The record is undisputed and the district court held that "Strong was given complete and total authority in handling the Davis matter by Curb, which included the retention of [Goins] as local counsel."  Curb, 1998 W.L. 120365, * 11 (E.D.La. 1998).

During the course of discovery, the Davis plaintiffs propounded discovery requests to Curb through Goins, who promptly forwarded the requests to Strong. At some point in early 1995, Goins received notice of a series of discovery defaults. During a nine-month period in 1995, the district court entered a series of discovery orders directing Curb to respond to the plaintiffs' discovery requests or risk having their defenses stricken. Goins forwarded all of these notices to Strong. Additionally, the court imposed monetary sanctions on Curb for failing to respond to its discovery orders. Goins forwarded these orders to Strong, and Strong paid the fines by personal check. The record is unclear whether Strong told Curb about these sanctions, and whether Goins was told that Strong was keeping Curb abreast of these developments.

B

On September 29, 1995, the Davis plaintiffs filed a motion to strike Curb's defenses. On October 11, 1995, Strong defended Curb at a hearing on the plaintiffs' motion to strike the defendant's defenses. On October 17, 1995, the court granted the plaintiffs' motion and struck Curb's defenses.

After settling the Davis matter,[4] Curb filed the instant legal

---

[4]Curb settled the Davis matter for approximately $650,000. Because Curb's defenses were struck by the district court, it could not argue that it was not a "wilful infringer" and thus limit the Davis plaintiffs' recovery to "infringers profits" under section 504 of the Copyright Act of 1976. See 17 U.S.C. § 504 (West 1999). Thus, Curb's liability in the Davis matter was increased from the

5

malpractice action against Goins.  Goins sought summary judgment.  In defending against the malpractice action, Goins argued, first, that no malpractice had occurred: Under the instructions given to them by lead counsel--that they were to have no direct contact with the client--they had no duty to bypass lead counsel and communicate directly with the client regarding lead counsel's failure to respond to discovery orders.  Second, Goins argued that, in any event, no damages resulted from the breach of this duty:  Curb's loss of its defenses resulted solely from its deliberate choice of a particular legal strategy--that it would simply ride out the litigation until there was a resolution as to the ownership of the copyrights to the music.

Curb contended that there were numerous issues of material fact that precluded summary judgment, including: (1) the authority and responsibilities of Goins as the attorney and fiduciary of Curb; (2) the negligence, fault and breach of fiduciary and legal duties by Goins; (3) the proportionate fault of Goins; and (4) the scope and extent of damages Goins caused to Curb.

Nevertheless, the district court, relying on fundamental principles of contract and agency law, granted summary judgment for Goins, holding:

> There is no doubt to this Court that Curb empowered Strong, without limitation, to handle the Davis matter.

relatively small amount of statutory damages provided under section 504 to nearly $800,000, the amount of gross revenues generated by the infringing phonorecord.

6

> Strong was the mandate (agent/attorney) for Curb. Acting on behalf of Curb, Strong retained defendants as local counsel, but specifically limited their contact with Curb. Based upon the mandate created between Strong and the defendants, defendants were specifically instructed to not contact Curb directly. This was a specific limitation on their mandate. Moreover, the record and evidence indicated defendants' participation in discovery was minimal. Strong was in complete charge of discovery and he was the one responsible for the defaults attributable to Curb. The Court refuses to imply a duty that simply does not exist. Goins and A & R had absolutely no superior duty to disregard and violate the terms of their mandate with Strong. . . . This Court finds A & R and Goins had no duty to violate the terms of their mandate with Strong and communicate directly with Curb. Absent a duty to act, there can be no negligence.

Curb Records, Inc. v. Adams and Reese, L.L.P., 1998 WL 120365, *12 (E.D.La. 1998). Curb filed a timely notice of appeal.[5]

## II

We review the district court's granting of summary judgment de novo, applying the same standards applied by the district court. See Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1337 (5th Cir. 1996). Summary judgment is proper when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A

In concluding that Goins owed no duty under Louisiana law to

---

[5]There was no hearing and no live testimony, either in open court or by way of deposition. The case was decided on affidavits alone.

7

inform Curb of lead counsel's failure to respond to court ordered discovery, the district court, as we have noted, relied solely on general principles of contract and agency law.  The district court's holding can be reduced to the following: The attorney-client relationship is contractual in nature, and the duties owed by the attorney to his client are defined wholly by the terms of that contract.[6]  A review of Louisiana case law reveals that this holding does not comport with established precedent.  For example, in <u>Cattle Farm, Inc. v. Abercrombie</u>, 211 So.2d 354 (La.Ct.App. 4th Cir. 1968), the court held:

> In no other agency relationship is a greater duty of trust imposed than in that involving an attorney's duty to his client. . . . The law leaves no uncertainty in defining the character of duty which an attorney owes to his client. <u>The relationship of attorney and client is more than a contract.</u>  It superinduces a trust status of the highest order and devolves upon the attorney the imperative duty of dealing with the client only on the

---

[6]The district court stated: "In Louisiana, the attorney-client relationship is defined and limited by any contractual agreement between the lawyer and the client as to the scope of the representation."  <u>See</u> <u>Curb</u>, 1998 WL at *2.  The district court cited <u>Grand Isle Campsites, Inc. v. Cheek</u>, 262 So.2d 350 (La. 1972), as the sole basis in support of this contention.  In <u>Cheek</u>, the Louisiana Supreme Court addressed whether an attorney, who was hired to check title to property and pass an act of sale, also had a duty to investigate how the parties arrived at the sales price for the property.  <u>Id.</u> at 30.  The court rejected the plaintiffs argument that such a duty existed, stating: "The agreement or consent of an attorney to perform work for a party on a particular matter or transaction does not create an attorney-client relationship as regards other business or affairs of the client."  <u>Id.</u> at 29 (<u>citing</u> <u>Delta Equipment and Construction Co. v. Royal Indemnity Co.</u>, 186 So.2d 454 (La.Ct.App. 1st Cir. 1966)).  The issues presented by the instant case are obviously distinct from those presented in <u>Cheek</u>.  Thus, the district court's reliance on the Louisiana Supreme Court's holding in <u>Cheek</u> is misplaced.

8

basis of the strictest fidelity and honor.

Id. at 365 (citations omitted & emphasis added).

Similarly, in Corceller v. Brooks, 347 So.2d 274 (La.Ct.App. 4th Cir. 1977), the court expressly rejected the contention that a legal malpractice action is based on a breach of contract stating:

> [W]e find no merit to plaintiff's contention that this malpractice suit is one based on breach of contract. Though it is true that a contractual agreement between [the parties] established the attorney-client relationship, this contract of employment merely gave rise to the attorney's legal duty to exercise at least the degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality.

Id. at 277. The Corceller court concluded by stating that any malpractice action must be based on the "act or omission which is below the standards of similar practitioners in the community." Id.

Thus, Louisiana precedent indicates that the district court erred in relying solely on general principles of contract and agency law in defining the duties owed by Goins to Curb. Louisiana law makes clear that the duties owed by an attorney to his client transcend the bounds of an ordinary contractual relationship. We thus turn to resolve the professional duty under Louisiana law that local counsel would owe its client under the circumstances of this case.

B

The case before us, as we have noted, is a legal malpractice claim. Under Louisiana law, to assert a claim for legal

9

malpractice the plaintiff must demonstrate (1) that there was an attorney-client relationship, (2) that the attorney was guilty of negligence or professional impropriety in the relationship with the client, and (3) that the attorney's misconduct resulted in harm to the client.  See Francois v. Reed, 714 So.2d 228, 229-30 (La.Ct.App. 1st Cir. 1998)(citing Finkelstein v. Collier, 636 So.2d 1053, 1058 (La.Ct.App. 5th Cir. 1994)). To succeed on a negligence-based malpractice claim, the plaintiff must demonstrate that the attorney failed to exercise the degree of care, skill, and diligence that would be exercised by a prudent practicing attorney in his locality.  See Nelson v. Waldrup, 565 So.2d 1078, 1079 (La.Ct.App.  4th Cir. 1990)(citing Ramp v. St Paul Fire & Marine Ins. Co., 269 So.2d 239 (La. 1972)).  Of course, there can be no cognizable negligence absent a duty to act.

Thus, the issue presented here is whether under Louisiana law there exists an inherent and nondelegable duty requiring local counsel to report directly to its client any known instances of malfeasance or misfeasance on the part of lead counsel.  This issue has not been squarely addressed by the Louisiana courts. Consequently, we are required to make an Erie guess.[7]

C

The Louisiana Supreme Court repeatedly has held that under Louisiana Rules of Professional Conduct, an attorney owes a duty to

---

[7]See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

his client "to exercise at least that degree of care, skill, and diligence exercised by prudent practicing attorneys in his locality." Ramp v. St. Paul Fire & Marine Ins. Co., 269 So.2d 239 (La. 1972); see also, Jenkins v. St. Paul Fire & Marine Ins. Co., 422 So.2d 1109 (La. 1982). The duty of care, skill, and diligence owed by an attorney in a particular case generally must be established through expert testimony. See Greiserman v. MacDonald, 893 F.2d 787, 793 (5th Cir. 1990)(stating that "expert testimony is necessary to establish the standard of care"); Houillon v. Powers and Noss, 530 So.2d 680, 682 (La.Ct.App. 4th Cir. 1988). Only in cases of "obvious" or "egregious" negligence that would be readily apparent to a lay person, or such egregious acts that would establish negligence as a matter of law, will expert testimony not be required to establish the duty owed by counsel to its client. See Nelson v. Waldrup, 565 So.2d 1078, 1079 (La.App. 4th Cir. 1990)(citing Ramp, 269 So.2d at 239)); Greiserman, 893 F.2d at 794.

D

Curb offered into evidence the declaration of Jack Martzell, a noted and respected attorney in the Eastern District of Louisiana, to establish the standard of care owed by local counsel under the circumstances presented here.[8] We focus on two specific

_____

[8]Both the record and Note 4 of the district court's opinion indicate that Curb attempted to submit additional evidence on the issue of local counsel's duty to inform the client of misfeasance or malfeasance on the part of lead counsel, but such attempts were deemed untimely by the district court and forbidden. See Curb, 1998 WL at *10. On remand, timeliness should not be a problem.

11

duties outlined in Martzell's statement that are relevant to our determination today. First, he stated that "the standard of practice in the Eastern District of Louisiana for the fulfilling of the attorney's fiduciary duty to his client precludes reliance on outside counsel for a corporate client to excuse contact with the client on discovery matters and compliance with scheduling orders." Second, he stated that "the fiduciary obligation, as generally understood in the Eastern District of Louisiana, includes advising a client in a manner to protect it from itself." Thus, he stated that it is generally understood that "there is an obligation to police the client's activities insofar as they may be negligently or intentionally in derogation of the law, rules or court orders." Based on these duties, and local counsel's failure to notify Curb of the discovery defaults, Martzell concluded that "the acts and omissions of Richard Goins and Adams and Reese violated the standard of practice for counsel of record and trial attorneys in the Eastern District of Louisiana and caused harm to Curb Records, Inc., in the Davis litigation."[9]

---

[9]Although Martzell's statement is helpful in determining whether under the standards of practice in the Eastern District of Louisiana an attorney has an inherent and nondelegable duty to report directly to its client any known instance of malfeasance or misfeasance on the part of lead counsel, it fails to fully take into account the specific factual circumstances in this case. For example, the statement does not discuss the effect, if any, an assertion by lead counsel that a particular avenue is to be pursued as a matter of legal strategy may have on the duty of local counsel. Thus, Martzell's statement is helpful only at the general level in deciding the duty owed in this particular case.

12

Goins did not offer any expert testimony; nor did they seek to depose Martzell. Instead, they relied exclusively on the evidence establishing the expressly limited role for which they were retained, to demonstrate as a matter of law that they did not breach their duty of care owed to Curb. In support of this contention, Goins has been unable to cite to any case law on point. We have likewise found none.

E

Our own inquiry has revealed some limited support in the Louisiana cases for the testimony of Curb's expert. In <u>Dixon v. Perlman</u>, 528 So.2d 637 (La.Ct.App. 2d Cir. 1988), the Louisiana Court of Appeals for the Second Circuit stated that: "[T]he duty of the attorney may extend to the protection of his client's own substandard conduct, carelessness, or error." <u>Id.</u> at 642 (<u>citing</u> <u>Meyers v. Imperial Cas. Indem. Co.</u>, 451 So.2d 649 (La.Ct.App. 3d Cir. 1984)). Similarly, in <u>Smith v. Becnel</u>, 396 So.2d 444 (La.Ct.App. 4th Cir. 1981), the court held that an attorney must use due care to insure that the decision of the client "[is] made only after the client has been informed of relevant circumstances." <u>Id.</u> at 445. This case law is in accord with Curb's expert regarding local counsel's duty to insure that the client is not being misguided or relying on erroneous advice that will result in an uninformed or unadvised decision.

Additionally, Louisiana Rules of Professional Conduct speak directly to counsel's duty to keep the client informed of

13

significant developments during the course of the representation. Louisiana Rule of Professional Conduct 1.4[10] imposes upon counsel the duties "to keep [the] client reasonably informed about the status of [the] matter" and to "give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued." La. Rules of Prof. Cond. 1.4. Further, Louisiana Rule of Professional Conduct 1.3[11] imposes upon counsel the duty to "act with reasonable diligence and promptness" in carrying out the duties owed to its client. La. Rules of Prof. Cond. 1.3.

F

It is clear that none of the authority cited above addresses the precise question presented by the instant case--specifically, the obligation of an attorney with secondary responsibility for a

---

[10]Louisiana Rule of Professional Conduct 1.4 states:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) The lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so.

La. Rules of Prof. Cond. 1.4.

[11]Louisiana Rule of Professional Conduct 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." La. Rules of Prof. Cond. 1.3.

case to report directly to the client any malfeasance or misfeasance on the part of lead counsel when he is under express instructions not to communicate with the client. However, after reviewing the relevant case law, the Louisiana Rules of Professional Conduct, and the statement of Mr. Martzell, we believe that Louisiana would conclude that, as a matter of law, local counsel in the Eastern District of Louisiana owes an inherent nondelegable duty to report directly to its client any known instances of malfeasance or misfeasance on the part of lead counsel that an objectively reasonable lawyer in the locality would conclude are seriously prejudicial to the client's interests.

We should observe that, generally speaking, it is clear that when the client has vested lead counsel with primary responsibility for controlling and conducting the litigation, local counsel's direct obligations to the client are substantially lessened. Further, there is no duty under Louisiana law or local practice that would require local counsel to notify the client that it disagrees with the professional judgment exercised and/or strategies pursued by lead counsel so long as those judgments and strategies lie somewhere on the spectrum of norms. But we nevertheless think that Louisiana Rules of Professional Conduct do not allow local counsel to turn a blind eye toward the willful disregard of court orders by lead counsel when it should be evident to him that such conduct will seriously prejudice the client's interests.

15

We recognize the potential concerns that are raised by the imposition of such a duty. We note with approval the observations of the Eighth Circuit when discussing this duty of care under Minnesota law:

> Local counsel does not automatically incur a duty of care with regard to the entire litigation. When the client vests lead counsel with primary responsibility for the litigation, the duty of local counsel is limited. Were the law otherwise, the cost involved in retaining local counsel would increase substantially. Confronted with a duty to monitor lead counsel's handling of the litigation, local counsel would be bound to review all manner of litigation documents and ensure compliance with all deadlines. Out-of-state litigants would be forced to pay a local attorney to review lead counsel's work. Given the skyrocketing cost of litigation, the duplication of effort and increased fees that would result from such a rule foster problematic public policy.

Macawber Engineering, Inc. v. Robson & Miller, 47 F.3d 253, 257-58 (8th Cir. 1995). Nonetheless, in a situation in which it is clear to a reasonable attorney that substantial prejudice will occur to the client as a result of lead counsel's malfeasance or misfeasance, we think that the duty of care under Louisiana law requires local counsel to notify the client of lead counsel's action or inaction, irrespective of instructions, excuses, or strategies of lead counsel.

III

In sum, we conclude that the district court erred by relying solely on general principles of contract and agency law to decide this case and in granting summary judgment dismissing this legal malpractice action. Instead, we hold that, pursuant to Louisiana

16

law, local counsel has an inherent and nondelegable duty to report directly to its client any known instances of malfeasance or misfeasance on the part of lead counsel that an objectively reasonable lawyer in the locality would conclude are seriously prejudicial to the client's interests. The case must be reconsidered in that light. Accordingly, the summary judgment granted by the district court is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion. We should note that we express no further opinion on any of the aspects of the ultimate merits of this legal malpractice claim.

REVERSED and REMANDED.